SK:APW
F.#2020R00673

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -                                                          Criminal Docket No. 20-624 (SMG)

ELIJAH SONG,

                Defendant.

- - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S DETENTION MEMORANDUM

                                                                                SETH D. DuCHARME
                                                                                Acting United States Attorney
                                                                                Eastern District of New York

Andrew P. Wenzel
Assistant U.S. Attorney
(Of Counsel)

PRELIMINARY STATEMENT

The defendant, Elijah Song, has been charged by complaint with arson, in violation of 18 U.S.C. Section 844(f)(1), which carries a mandatory minimum sentence of 5 years' imprisonment. The charged offense arises from the defendant's actions in the early morning hours of July 18, 2020, when he set fire to a New York City Department of Transportation ("DOT") traffic enforcement camera. For the reasons set forth herein, there are no conditions or combination of conditions that would reasonably safeguard the community or assure the defendant's appearance. The Court should enter a permanent order of detention pending trial.

STATEMENT OF FACTS

On July 18, 2020, at approximately 12:30 a.m., New York City Police Department ("NYPD") officers on patrol in the Douglaston area of Queens learned that a number of traffic enforcement cameras throughout northeast Queens had been set on fire earlier that same night. Because of this information, an NYPD officer and his partner were watching the intersection of Northern Boulevard and Douglaston Parkway, where a traffic enforcement camera was located. The officer saw the defendant set the DOT traffic enforcement camera on fire. The defendant was wearing a sweatshirt with a black baseball cap and had a dark backpack on his back. The officer chased the defendant through a nearby cemetery and lost him in the cemetery.

As the officers were chasing the defendant, members of the New York City Fire Department ("FDNY") were at Engine 313, located at 44-01 244 Street, Queens, which is about a block away from the traffic enforcement camera and half a block away from the cemetery. The FDNY members saw the defendant park a Silver Toyota Camry behind their firehouse on a dead-end street where non-FDNY vehicles are not authorized to park. The FDNY members quickly directed the police to the car. By the time NYPD officers got to the car, the defendant had fled on foot, so the members of the NYPD set up surveillance of the car. Inside of the car, officers saw a black baseball cap and a dark backpack.[1]

Members of the NYPD watched the Toyota Camry and waited for an NYPD tow truck to arrive. One of the officers watching the car recognized it as belonging to his

---

[1] At one of the other locations on July 17, video surveillance depicts an individual leave a silver sedan and set fire to a camera. At a different location, video surveillance depicts an individual wearing the same clothes set fire to a camera.

2

neighbor, the defendant, Elijah Song.  Additionally, this same officer had seen the defendant on prior occasions fixing his motorcycle and had seen him wearing a dark motorcycle helmet with a green neon design; on the night of the incident, the officer saw the defendant with the same helmet in the vicinity of the abandoned Toyota Camry.

After obtaining a search warrant, Fire Marshals searched the abandoned Toyota Camry and recovered: a grey and black Nike backpack containing two bottles of ignitable liquid, consistent with gasoline; a dark Yankee baseball hat; four gas cans containing approximately 8 gallons of gasoline; aerosol cans matching the make and model of cans found at the camera at Northern Boulevard and Douglaston Parkway; numerous hand tools including bolt cutters, a sledge hammer and an 8" hunting knife; a metal plate which DOT confirmed is used specifically for traffic enforcement cameras; and numerous receipts, mail, and packages bearing the name Elijah Song.  Some of these receipts were for car repairs for the Toyota.

Furthermore, Fire Marshals recovered a spiral notebook containing the defendant's name, Elijah Song, and handwritten notes.  The notebook included statements that supported the manifesto of Brenton Tarrant, the perpetrator of a recent mass shooting in New Zealand that killed 51 people.  One note stated, "I would love to kill me a whole bunch of those fuckers, just like the New Zealand shooter who killed 50 of them."  Other statements expressed a desire to obtain training in explosives, knives, guns and hand-to-hand combat.  One note stated that after receiving this training, he would "like to be the catalyst, to take back the country from the ancient, evil, devil worshippers."  Other notes and lists in this notebook expressed a desire to build an AR-15 assault rifle, as well as to repair his motorcycle.  Finally, Fire Marshals also recovered stacks of anti-Semitic propaganda flyers.

ARGUMENT

I. Legal Principles

Federal law requires that a defendant must be detained pending trial if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A finding of dangerousness must be supported by clear and convincing evidence; a finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987). In the pretrial context, the government bears the burden of showing that the defendant should be detained. United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001).

Courts consider several factors in making the determination of whether detention is appropriate: (i) "the nature and circumstances of the offense charged" including specifically whether the offense involves a "firearm, explosive, or destructive device;" (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including his past conduct, criminal history, and prior record concerning appearances at court proceedings; and (iv) the nature and seriousness of the danger to the community or to an individual in the event of the defendant's release. See 18 U.S.C. § 3142(g). In making this determination, the Court is entitled to rely on evidence presented by proffer. See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000).

4

II.     The Defendant Should Be Detained

The nature and circumstances of the charged offense—which includes setting property on fire—as well as the strength of the evidence, and, most importantly, the seriousness of the threat posed by the defendant, all support his detention as a danger to the community. Moreover, the overwhelming evidence of the defendant's guilt and the likelihood that the defendant will serve at least the mandatory minimum sentence support his detention as a flight risk. Thus, as set forth below, each factor under Section 3142(g) weights in favor of detention.

A.      The Nature and Circumstances of the Offense

It is apparent that the defendant poses a danger to the community, given that he used accelerants to ignite traffic cameras located at busy intersections. In addition, because the charged offense is arson, the defendant is likely to receive a sentence at the statutory minimum of five years' imprisonment, providing him with a significant incentive to flee and providing the Court with an additional basis for detention.

B.      The Weight of the Evidence

The weight of the government's evidence of the charged offense is strong. It includes numerous incriminating pieces of evidence in the defendant's car, as well as the testimony of an officer that knows the defendant, knows the car, and observed the defendant returning to the car after it was abandoned. Therefore, the weight of the evidence weighs heavily in favor of detention.

C.  The History and Characteristics of the Defendant

The instant offense is not the defendant's first run-in with the law. On February 16, 2020, the defendant was arrested in Queens and charged with assault in the third degree. That case remains open.

D.  The Seriousness of the Danger to the Community.

The disturbing contents of the defendant's notebook and the anti-Semitic flyers recovered from his car reflect an intent to do greater harm and provide a basis for serious concern that the defendant would pose a threat to his community if released. As discussed, the defendant expresses his admiration for the perpetrator of the recent mass shooting in New Zealand, and writes, "I would love to kill me a whole bunch of those fuckers, just like the New Zealand shooter who killed 50 of them."

Furthermore, the defendant appears to be researching and preparing to construct an AR-15 firearm, as demonstrated by his list of the parts and prices of components of the weapon and writing "AR 15 build." The defendant repeatedly notes the "80 percent frame" (often referred to as "80%" or "80% finished" or "80% complete" in industry parlance), which is an unfinished firearm frame that is advertised as being 80 percent complete and can be easily further finished and assembled into a firearm frame or receiver, and a fully functional firearm. The defendant also appears to note various other parts of the firearm he needs to assemble the weapon.

Finally, on the same page as he lists his desire to build an AR-15 and its parts, the defendant expresses his intent to set up an ipostal1.com account, which would permit him to receive deliveries of the components of the weapon at an address that he specifies.

These very specific notations demonstrate the defendant's intention to go beyond just expressing his disturbing fantasies, and show that he has researched and is planning to construct his own personal firearm.

## CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court order the defendant to be detained pending trial, as there is no condition or combination of conditions that could reasonably assure the safety of the community or the defendant's appearance at trial.

Dated: Brooklyn, New York
      August 3, 2020

                                        Respectfully submitted,

                                        SETH D. DuCHARME
                                        Acting United States Attorney

                       By:    /s/
                                        Andrew P. Wenzel
                                        Assistant U.S. Attorneys
                                        (718) 254-6466

cc:    Clerk of Court (RRM) (By ECF)
       All counsel of record (By ECF)