1

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,    :    20-MJ-624(SMG)

         Plaintiff ,         :
                                  United States Courthouse
     -against-               :    Brooklyn, New York

ELIJAH SONG,                 :
                                  August 3, 2020
         Defendant.          :    4:45 p.m.

- - - - - - - - - - - - - - X
```

TRANSCRIPT OF ARRAIGNMENT
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        SETH DuCHARME
                           United States Attorney
                           BY: ANDREW WENZEL,
                           Assistant United States Attorney
                           271 Cadman Plaza East
                           Brooklyn, New York

For the Defendant:         RAMCHARITAR LAW FIRM, P.C.
                           3808 Union St, #2b
                           Flushing, New York
                           BY: NICHOLAS RAMCHARITAR, ESQ.

Court Reporter:            Andronikh M. Barna
                           225 Cadman Plaza East
                           Brooklyn, New York
                           (718) 613-2178

Proceedings recorded by mechanical stenography, transcript produced by computer-aided transcription.

2

1  THE CLERK:  This is criminal cause for arraignment.
2  Case No. 20-MJ-64, United States versus Elijah Song.
3  Counsel, starting with the government, please state
4  your appearances.
5  MR. WENZEL:  Good afternoon.  This is Andrew Wenzel
6  for the government.
7  THE COURT:  Good afternoon, Mr. Wenzel.
8  MR. WENZEL:  Good afternoon, Your Honor.
9  MR. RAMCHARITAR:  And, Judge, good afternoon.  This
10  is Nicholas R-a-m-c-h-a-r-i-t-a-r of the Ramcharitar Law Firm,
11  P.C. for Mr. Song.
12  THE COURT:  Mr. Ramcharitar; is that right?
13  MR. RAMCHARITAR:  Yes, sir.  Yes, sir, that's pretty
14  good.  Thank you.
15  THE COURT:  And I know we have Ms. Vazquez on the
16  line from Pretrial Services.
17  MS. VAZQUEZ:  Yes, Your Honor.
18  THE COURT:  Thank you.  And I am looking at someone
19  I believe to be Mr. Song by video link.
20  Mr. Song, do you speak and understand English?
21  THE DEFENDANT:  Yes, sir.
22  THE COURT:  Mr. Song, you are before the Court based
23  upon a warrant that I issued on Saturday.  Now that you are
24  under arrest pursuant to an arrest warrant, you have certain
25  constitutional rights that I would like to make sure that you

1  understand.

2         You have the right to remain silent.  You do not
3  have to make any statements or answer any questions.  If you
4  have started, you have the right to stop.  If you choose to
5  remain silent, no one may use it as evidence against you in a
6  court of law.  On the other hand, if you make any statements
7  to anyone other than your own attorney, the prosecutor may
8  learn what you have said and attempt to use it as evidence
9  against you.

10        Are we understanding each other so far?

11        THE DEFENDANT:  Yes, sir.

12        THE COURT:  Mr. Ramcharitar, I understand that you
13  are retained in this matter; is that accurate?

14        MR. RAMCHARITAR:  That is accurate, Your Honor.  I
15  am retained by the defendant's mother, Mrs. Song.

16        THE COURT:  And do you intend to file a notice of
17  appearance, if you have not yet?

18        MR. RAMCHARITAR:  Yes, Judge. We have not -- and I
19  apologize to the Court -- only because I have been out of
20  pocket for the majority of the day.  I will file one towards
21  the end of the --

22        THE COURT:  That is all right.

23        There are no preconditions outstanding?

24        Mr. Ramcharitar, there are no preconditions to you
25  doing so; is that right?

4

1  MR. RAMCHARITAR:  Oh.  No, Judge, not at all.
2  Sorry.
3  THE COURT:  Okay.  Mr. Song, if you could not afford
4  an attorney and you satisfied me of that, I would appoint a
5  lawyer to defend you; because under the Constitution, you have
6  a right to be represented by an attorney, defended by a
7  lawyer, whether you have the money to retain one or not.  But
8  Mr. Ramcharitar says that your family has retained him to
9  defend you in this case and that you are not seeking an
10 attorney appointed by the Court at no cost to you.  Is that
11 accurate, Mr. Song?
12 THE DEFENDANT:  Yes, sir.
13 THE COURT:  You have a right to understand what you
14 have been accused of.  The prosecutor has prepared a document
15 we call a complaint.  Have you had a chance to see the
16 complaint, talk to Mr. Ramcharitar about it, and do you
17 understand what you are charged with in it?
18 THE DEFENDANT:  I have not seen the complaint.
19 THE COURT:  You have not seen that document?
20 Is that right, Mr. Ramcharitar?
21 MR. RAMCHARITAR:  Judge, it was my understanding
22 that during detention, the document was presented to him by
23 Pretrial.  That was what we spoke about briefly, so it was my
24 understanding he did see the complaint.
25 THE COURT:  Does that refresh your recollection,

1  Mr. Song?
2          THE DEFENDANT:  Yes, sir.
3          THE COURT:  Do you understand what you are being
4  accused of in this case?
5          THE DEFENDANT:  Yes, sir.
6          THE COURT:  Now, Mr. Ramcharitar, we are conducting
7  this proceeding remotely.  The defendant and I can see each
8  other by a video link, but you and the prosecutor and the
9  other relevant personnel are appearing only through a
10 telephone line.  This is pursuant to the CARES Act and certain
11 administrative orders, including No. 20 of the year 2020,
12 issued by our Chief Judge.  Is there any objection to
13 proceeding in this manner by the defendant, Mr. Ramcharitar?
14         MR. RAMCHARITAR:  On the defendant's behalf,
15 Your Honor, we do consent to proceed by telephone.
16         THE COURT:  Thank you.  Does the defendant seek a
17 preliminary hearing or does he prefer to waive to the 30th
18 day, Mr. Ramcharitar?
19         MR. RAMCHARITAR:  Judge, he does prefer to waive to
20 the 30th day if the Court will allow.
21         THE COURT:  I will ask the clerk to note the waiver.
22         Are you satisfied now that your client understands
23 his pertinent constitutional rights and the charge that is
24 pending against him, Mr. Ramcharitar?
25         MR. RAMCHARITAR:  Yes, Judge, I do.

1    THE COURT:  Mr. Ramcharitar, the prosecutor has
2  provided the Court with a detention memorandum and several
3  exhibits which appear to be photographs of pages of a
4  notebook.  Have you had an opportunity, Mr. Ramcharitar, to
5  review that memorandum and the exhibits?
6    MR. RAMCHARITAR:  Yes, Judge, we already received
7  and we do acknowledge receipt of both, plus the exhibits.  And
8  we have had time to review the photographs of the notebook
9  that were sent to us via e-mail.
10    THE COURT:  Are you seeking to make an application
11  for pretrial release today?
12    MR. RAMCHARITAR:  Yes, Judge, we would.
13    THE COURT:  I am ready to hear your argument.
14    Well, you know what, before we do that, Mr. Wenzel,
15  is there anything you want to add to the detention memo?
16    MR. WENZEL:  No, Your Honor.  I will rely on the
17  detention memo.
18    THE COURT:  Ms. Vazquez, I understand that Pretrial
19  has not had the opportunity to prepare a written Pretrial
20  Services report.  Are you in a position to provide the Court
21  and counsel with an oral summary?
22    MS. VAZQUEZ:  Yes, Your Honor, we are prepared to do
23  that.  We normally don't do that with the press on the line,
24  but if counsel and Your Honor agree, then we can go ahead and
25  give an oral report.

1           THE COURT:  Is there any objection, Mr. Ramcharitar?
2           MS. VAZQUEZ:  Due to the confidential nature of the
3    information we will provide.
4           THE COURT:  Mr. Ramcharitar, would you rather I not
5    hear from Pretrial?
6           MS. VAZQUEZ:  Pretrial can give a bail report off
7    the record to the three parties, to the Judge and the
8    attorneys separately, if necessary.
9           THE COURT:  I can hear your bail application -- go
10   ahead, Mr. Ramcharitar.
11          MR. RAMCHARITAR:  I'm sorry, Judge.  We have no real
12   objection to it, other than addresses and names of individuals
13   not named in the complaint just to be omitted, considering the
14   press is on the line.  If that can be done, we have no
15   objection to Pretrial giving an oral summary.
16          THE COURT:  Ms. Vazquez, maybe we can limit it to
17   community ties, mental health, substance issues and prior
18   record.  Why don't we start there?
19          Is that all right, Mr. Ramcharitar?
20          MR. RAMCHARITAR:  Yes, Your Honor.
21          THE COURT:  Go ahead, Ms. Vazquez.
22          MS. VAZQUEZ:  Okay.  I'm sorry.  I'm not sure that I
23   took a note of all that.
24          THE COURT:  Would you like me to say it again?
25          MS. VAZQUEZ:  Yes, let me do that.  Okay, go ahead.

1                THE COURT:  Employment, community ties, mental
2     health and substance abuse and prior record.
3                MS. VAZQUEZ:  Okay.  Okay, so Mr. Song indicated
4     that he is employed as a pharmacist at a pharmacy in Queens.
5     He was born in Manhattan and is a U.S. citizen.  He does have
6     a passport at home.
7                He reported good mental health, good physical health
8     and no substance abuse issues.
9                His prior record includes a misdemeanor arrest in
10    February of this year in which the arrest report indicates
11    that he punched an acquaintance in the face, causing redness,
12    swelling and a laceration to the victim's right eye.  His next
13    court date on that matter is September 21st of 2020.  A
14    temporary order of protection was issued on March 7th on that
15    case.
16               And although this wasn't on your list, Judge, there
17    is something that Pretrial Services does want to note
18    regarding some weapons parts that he revealed having during
19    the bail interview.  Can I go ahead and do that?
20               THE COURT:  Mr. Ramcharitar, do you want to
21    interpose an objection?
22               MR. RAMCHARITAR:  It is listed in the government's
23    detention memo, so I will not object at this time because I
24    will be bringing up the relevant facts to that question as
25    well.

1	THE COURT:  Okay.  Go ahead, Ms. Vazquez.
2	MS. VAZQUEZ:  Okay.  I think that's pretty much it.
3	Our recommendation is a recommendation for
4	detention.
5	THE COURT:  Thank you.  Mr. Ramcharitar, I have the
6	government's memo and the Pretrial report.  What would you
7	like to argue to the Court?
8	MR. RAMCHARITAR:  Thank you, Judge.
9	Judge, a little bit about Mr. Song.  Mr. Song comes
10	from a very strict and traditional Asian, Korean family.  I've
11	known Mr. Song personally and, in fact, his attorney for a
12	period of approximately two years.  I know his family; more
13	specifically, his mother, who I have spoken to, I have met
14	with and dealt with on numerous occasions.  I can tell the
15	Court that Mr. Song does come from a very good family.
16	Mr. Song completed a very high level of education.  He's
17	licensed as a pharmacist in the State of New York, and does
18	permanently reside with his mother in Flushing.  Mr. Song was
19	temporarily living not at his mother's house.  He was living
20	with his girlfriend, who is now his fiancé, and that was only
21	because of the fact that his mother is a little bit elderly,
22	she does have a depleted immune system, and he was doing that
23	because of the COVID pandemic.  If the Court does see fit to
24	release Mr. Song in some form, he will be returning to his
25	mother's house under which he will have direct supervision by

1  his mother.
2           Again, Mr. Song does, as Pretrial stated, have a
3  passport at home, which we have spoken about, and we will
4  forthwith turn that passport in to the Court to ensure that he
5  will be not be leaving the country for any means.  I've
6  discussed that at length.  Mr. Song does understand that these
7  are very serious charges.  There is a minimum sentence on this
8  if he is found or pleads guilty, and he does understand the
9  serious nature of these charges.
10          Judge, with that being said, in relation to his open
11 case in Queens, I do myself personally represent him through
12 my firm and I can make the Court aware that after multiple
13 conversations with the District Attorney's Office prior to the
14 pandemic, this misdemeanor assault charge was being ACD'ed.
15 Unfortunately, we weren't able to take that ACD because of the
16 pandemic.  The defense purported that it was a self-defense
17 during that assault, which the ADA did conclude it was, which
18 is why that disposition was made available to Mr. Song.
19          Again, Judge, understanding that these charges are
20 very serious, he is an outstanding member of the community
21 prior to these allegations.  He continues to work in the state
22 of New York as a pharmacist.  And again, has no reason after
23 obtaining private counsel -- and again, Judge, he's made each
24 and every court appearance, including virtual appearances, and
25 prior to that, in-person appearances.  I don't have the

benefit of looking at his current NYSID; however, I do know that the last time I looked at it, which was about three months ago, there were no prior warrants and there were no prior missed court appearances.

We would ask the Court to consider some sort of supervised release in this instance, including but not opposed to any kind of GPS monitoring bracelet.  Again, Mr. Song fully understands the weight of the charges against him and fully intends to fight these charges to the best of his ability through private counsel, and we would ask the Court to consider some sort of release aside from a permanent detention pending trial.

Thank you, Judge.

THE COURT:  Thank you.

Mr. Wenzel, I will hear from you, and you can tell me whether it is the government's position as to whether this is a presumption case.

MR. WENZEL:  Your Honor, I just want to stress again, it's in the detention memo, the threat posed by the defendant to the community.  I mean, a GPS monitor is not going to dissipate that threat.  Your Honor has seen the pages that we allege are from the defendant's notebook with the threats, the agreement with the Mad Shooter in New Zealand from last year.  And again, I want to emphasize that the notes beyond that show that he's taken real steps, real research and

1  real steps to attempt to assemble a weapon, an AR-15.  And at
2  first glance, they look kind of -- the notes are tough to
3  decipher, but as it lays out in the detention memo, he does
4  look at costs on various parts for these weapons, he looks at
5  the tools needed to assemble the weapon.  He sets up, or at
6  least he notes that he's going to set up a postal -- a virtual
7  postal address to have these weapons delivered -- I'm sorry,
8  these parts delivered to him.  None of this will be cured by
9  having a GPS monitor.  So the real crux of our argument is the
10 dangers that the defendant poses and the steps he seems to
11 have taken to move forward --
12             (Telephonic interruption.)
13             MR. WENZEL:  I apologize for that.
14             The GPS device won't cure the threat that this
15 defendant poses, Your Honor, seeing the threat that he makes
16 in this journal.  But as I stressed before and I stress in the
17 memo, he's taken real steps toward assembling a weapon, an
18 AR-15.  He's done research.  He's looked at the specific
19 stores online where he can buy these parts.  He's looked at
20 prices.  He set up a virtual postal account to have things
21 delivered.
22             THE COURT:  Where is that in the memo?  I am sorry.
23             MR. WENZEL:  It's one of the pages -- it's at the
24 end of the memo, Your Honor.  Let me just find it.
25             It's the iPostal1.com account, which is noted in a

13

1   couple of the notebook pages.
2           THE COURT:  Is it in your memo?
3           MR. WENZEL:  Yes.  It's on page 6, at the bottom of
4   page 6.
5           THE COURT:  Ah, at the bottom.  Got it.  Thank you.
6           MR. WENZEL:  Yes, Your Honor.
7           So all of these facts show that he's gone beyond
8   just these disturbing threats and disturbing manifesto, or
9   whatever you'd like to call it, towards real action, which is
10  really, really concerning.  So that's the crux of our
11  argument.
12          THE COURT:  Mr. Wenzel, you did not answer my
13  question about whether the government's position is that this
14  is a presumption case.
15          MR. WENZEL:  Yes, Your Honor.  I think -- may I just
16  have a moment?
17          THE COURT:  Yes.
18          MR. WENZEL:  I do think that there is an argument
19  that this is a presumption case, Your Honor.  It's a crime of
20  violence.  I think the Tenth Circuit held on a recent case, on
21  a related arson charge, could be committed against your own
22  property.  But I think under 844(f), this is the property of
23  the government or another organization.  So I do think this
24  would qualify as a crime of violence and is a presumption
25  case.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

14

1  THE COURT: Thank you.

2  Mr. Ramcharitar, is there anything further you would
3  like me to take into account from the defendant's perspective?

4  MR. RAMCHARITAR: Judge, not at this time. We'll
5  rely on our prior bail application.

6  THE COURT: I am going to enter a permanent order of
7  detention. That is based upon the fact that I agree that this
8  is a presumption case. It is based upon the fact that there
9  were 8 gallons of gasoline found in four gas cans in the
10 defendant's car. It is based upon the danger indicated by the
11 excerpts from the spiral notebook that refer to admiring
12 someone who killed people and expressed the desire to kill
13 people himself. And it is based on the indications of efforts
14 to get parts for an assault rifle or other kind of weapon. I
15 am not really sure whether an AK-47 is such or not off the top
16 of my head, but certainly a serious weapon. When you take
17 that with the ill logic and wanton disregard for the safety of
18 what he was involved in, goes along with lighting fire to
19 cameras at busy intersections, even if it was in the middle of
20 the night, this is a very disturbing case with respect to the
21 danger to the community, and I find that the government has
22 established it by clear and convincing evidence, and so I am
23 entering a permanent order of detention.

24 Did we address whether the defendant would like a
25 preliminary hearing or prefers to waive to the 30th day?

15

1  MR. RAMCHARITAR: We did, Your Honor. After
2  speaking to my client, we will be waiving to the 30th day and
3  not requesting a prelim.
4  THE COURT: Yes. And now that you are speaking
5  about it, I do recall asking it.
6  Is there anything further that the government
7  believes I should address during this proceeding?
8  MR. WENZEL: No, Your Honor. Thank you.
9  THE COURT: And, Mr. Ramcharitar, is there anything
10 further from the defendant?
11 MR. RAMCHARITAR: Not at this time, Judge. Thank
12 you very much.
13 THE COURT: Thank you very much. And I am going to
14 end the proceeding, and I will be completing and sending a
15 permanent order of detention to the court clerk in the next
16 few minutes.
17 Have a good day, everybody.
18 MR. RAMCHARITAR: Thank you, Judge.
19 MR. WENZEL: Thank you.
20 (Matter concluded.)
21             *     *     *     *     *
22 I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.
23
24    /s/ Andronikh M. Barna          August 25, 2020
25    ANDRONIKH M. BARNA              DATE