

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CMM:APW  *271 Cadman Plaza East*
F. #2020R00673  *Brooklyn, New York 11201*

February 4, 2022

By ECF

The Honorable Sterling Johnson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Elijah Song
                  Criminal Docket No. 21-89 (SJ)

Dear Judge Johnson:

      On September 1, 2021, Elijah Song (the "defendant" or "Song") pled guilty to Count Five of the indictment, which charged Arson, in violation of Title 18 United States Code Section 844(f)(1). See Pre-Sentence Report ("PSR") ¶ 1. For the reasons set forth below, the government respectfully submits that a sentence of 60 months' incarceration followed by three years of supervised release is appropriate in this case.

    I.    Background

      A.  Defendant's Crimes

      Between March 14, 2020 and July 18, 2020, seventeen traffic cameras were burned at various locations throughout Queens. The defendant is the only suspect in each of these seventeen fires.

      As a result of his guilty plea, the defendant admitted setting fire to five of these seventeen traffic cameras between June 22, 2020 and July 18, 2020. See PSR ¶¶ 2-6. In order to burn the cameras, the defendant unscrewed the plates at the base of the traffic camera poles, poured gasoline or another accelerant into the base, and lit a fire. This caused the wires inside the pole to burn and the cameras to stop functioning. Furthermore, during some of these incidents the defendant put aerosol cans in the base of camera as the fire was burning. See PSR ¶ 12.

      The defendant was observed on July 18, 2020, by a uniformed police officer lighting the inside of the base of a traffic camera on fire at the intersection of Northern Boulevard and Douglaston Parkway in Queens. As officers pursued the defendant, he got into

his car, drove to a dead-end street, abandoned the car and fled on foot. A search of the car revealed gasoline, traffic camera plates, aerosol cans and other incriminating evidence, including items indicating that the car belonged to the defendant (e.g., mechanic receipts in the name of Elijah Song and packages addressed to Elijah Song). See PSR ¶¶ 10 - 12.

Also in the car, officers recovered a spiral notebook. Towards the back of the notebook, the defendant wrote that if it was not for his girlfriend, he "would love to kill me a whole bunch of those fuckers, just like the New Zealand shooter who killed 50 of them."[1] There were also anti-Semitic flyers in the defendant's car. The defendant was arrested without incident on August 3, 2020. See Amended PSR, dated January 13, 2022.

Search warrants for the defendant's house and his girlfriend's house revealed firearm parts, but not enough to constitute a functional weapon. A review of the contents of the defendant's phones revealed anti-Semitic and other racist memes, and further indications that the defendant was seeking to assemble a gun. See PSR ¶ 13.

B. The Indictment

On February 27, 2021, a grand jury in the Eastern District of New York returned an indictment charging the defendant with five separate counts of arson, in violation of 18 U.S.C. § 841(f)(1). See ECF Dkt No.18, dated February 17, 2021.

C. Change of Plea Hearing

On September 1, 2021, pursuant to a plea agreement with the government, the defendant pled guilty before this Court to Count Five of the indictment; specifically, that on or about July 18, 2020, the defendant intentionally set fire to a traffic camera located at the intersection of Northern Boulevard and Douglaston Parkway in Queens. The defendant further admitted that he set fire to traffic cameras on June 14, 2020; June 22, 2020; and at two separate locations on July 17, 2020. Because the statutory minimum for the crime of convictions was sixty months, the government calculated the guideline range to be 60 months. See ECF Dkt No. 24, dated September 1, 2021.

II. Criminal History

The government agrees with the Probation Department's determination that the defendant falls within Criminal History Category I, with zero criminal history points. See PSR ¶¶ 63 - 64.

---

[1] This appears to be a reference to the Christchurch mass shooting in New Zealand.

III.     Sentencing Guidelines

Although it was not included in the parties' plea agreement, the PSR applied the sentencing enhancement set forth in U.S.S.G. §2K1.4, which provides for an increase in the base offense level if the offense created a risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly.

As the PSR correctly notes, the defendant intentionally used an accelerant to start the fires, intentionally set the fires on public streets, and intentionally placed aerosol containers into some of the fires. As such, the government certainly understands the PSR's conclusion that the defendant knowingly created a risk of serious bodily injury to others, including fire fighters who would have to extinguish the fire, and U.S.S.G. § 2K1.4 should apply. See United States v. Gio, 7 F.3d 12979 (7th Cir. 1993) ("Creating a substantial risk of death or serious bodily injury includes creating that risk to fire fighters and other emergency and law enforcement personnel who respond to investigate an offense.")

The defendant contends that he did not knowingly create a substantial risk of death or serious bodily injury, as the fires were set inside the confined metal base of traffic cameras and done late at night on sparsely populated streets. The defendant cites the following cases in support of his argument. (United States v. Honeycutt, 8 F.3d 785, 787 (11th Cir. 1993)(Model Penal Code definition of "knowingly" applies to the arson guidelines. This definition requires "aware[ness] that it is practically certain that [the defendant's] conduct will cause such a result." Instead, the sentencing court must find that "it was practically certain that [the defendant's] actions would cause a substantial risk of death or serious injury, and (2) the defendant was aware of that fact.") United States v. Karlic, 997 F.2d 564, 569 (9th Cir. 1993); United States v. Ruiz, 105 F.3d 1492, 1506-07 (1st Cir. 1997) ("[w]hether or not the defendant acted 'knowingly' calls for an inquiry into his subjective state of mind when he created the requisite risk").

In the government's view, based on the circumstances in which the fires were lit and the defendant's admissions, there is certainly a basis for the court to apply the enhancement set forth in U.S.S.G. § 2K1.4. However, because the government did not include the enhancement in its plea agreement, it is not attempting to prove by a preponderance of evidence that the enhancement applies.

Additionally, because the defendant admitted in his plea allocution to committing four additional arsons, the PSR correctly determined that these acts should be treated as if the defendant was convicted of the additional counts. See U.S.S.G. § 1B1.2(c). Therefore, given these additional counts, which results in a total number of five units under the multiple count adjustment as set forth in U.S.S.G. § 3D1.4, the defendant's offense level is increased by four points.

Therefore, the government's position is that after accepting responsibility, the defendant's total offense level is 21, resulting in a Guideline Range of 37- 46 months incarceration. However, as the authorized minimum sentence is five years, the effective

Guideline Range is 60 months incarceration.[2]

IV. Restitution

After the parties reached a plea agreement, the NYC Department of Transportation submitted a revised analysis of the total loss amount, which was $89,262.58. As such, the government consents to the restitution amount being reduced from $137,000 to $89,262.58.

V. Section 3553(a) analysis

The government respectfully submits that a sentence of 60 months' imprisonment would be sufficient, but not greater than necessary, to achieve the goals of sentencing.

The defendant committed serious offenses and his intentional conduct created a risk that other citizens, including firefighters, motorists, and pedestrians, would be harmed because of his crimes. Additionally, the sheer number of the times the defendant burned traffic cameras shows that his conduct would have continued if he had not been caught in the act. Indeed, even after the police observed the defendant lighting a fire, he fled on foot and then in a car, which was full of more supplies to burn traffic cameras. This conduct should be considered by the court when imposing an appropriate sentence.

Finally, the defendant's disturbing and hateful writings, as well as his efforts to assemble firearms, including an assault rifle, are extremely concerning and must be considered by the court in assessing the appropriate punishment needed to protect society.

The requested sentence would reflect the seriousness of the defendant's crimes and the need to promote respect for the law, as well as serve to protect the public from this defendant's further criminal conduct and act as a deterrent to others who believe that they can destroy public property, and imperil the safety of others, with little consequence.

---

[2] The defendant, acting *pro se*, filed additional objections to the PSR. See ECF Dkt No.29, dated January 7, 2022. Defense counsel has informed the government that he does not adopt the defendant's objections.

VI. <u>Conclusion</u>

For the foregoing reasons, as set forth in the plea agreement, the government respectfully requests that the Court impose a sentence of 60 months' imprisonment, followed by a three-year period of supervised release.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s         
Andrew P. Wenzel
Assistant U.S. Attorney
(631) 715-7832

cc:     Clerk of the Court (SJ) (by ECF and Email)
       Steve Zissou, ESQ. (by ECF and Email)