UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    -against-

ELIJAH SONG,

        *Defendant*.

21-CR-89 (ARR)

NOT FOR ELECTRONIC
OR PRINT PUBLICATION

**OPINION & ORDER**

ROSS, United States District Judge:

    Defendant, Elijah Song, has filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This provision permits a prisoner, after exhausting administrative remedies, to move for compassionate release on his own behalf and permits me to grant a sentence reduction where "extraordinary and compelling reasons" warrant it after consideration of the applicable factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Mr. Song principally argues that his sentence should be reduced based on (1) the conditions of his incarceration due to the COVID-19 pandemic and the effects those conditions have had on his mental health; and (2) sentencing disparities with defendants found guilty of similar conduct. Def. Elijah Song's Mot. for Compassionate Release 1, 14–30 ("Mot."), ECF No. 37; Def. Elijah Song's Reply in Supp. Mot. for Compassionate Release 1 ("Reply"), ECF No. 42. He requests that I reduce his sentence to time served. Mot. 38. The government opposes, arguing that Mr. Song has not exhausted administrative remedies, that he has failed to present extraordinary and compelling reasons, and that the § 3553(a) sentencing factors counsel against early release. Gov't Opp'n to Mot. for Compassionate Release ("Opp'n"), ECF No. 39. For the reasons that follow, I deny Mr. Song's motion.

**BACKGROUND**

On September 1, 2021, Mr. Song pleaded guilty to Count Five of a five-count indictment, charging him under 18 U.S.C. § 844(f)(1) with a July 18, 2020 arson of a New York City Department of Transportation traffic enforcement camera in Queens. Pre-Sentence Investigation Report ¶ 1, ECF No. 26 (under seal). Mr. Song also stipulated that he committed the arsons charged in the other four counts of the indictment, which related to arsons of other traffic enforcement cameras in June and July 2020. *Id.* ¶¶ 2–6. On February 9, 2022, Judge Sterling Johnson, Jr. sentenced Mr. Song to the five-year mandatory minimum sentence for arson in violation of 18 U.S.C. § 844(f)(1), followed by three years of supervised release. *See* Judgment, ECF No. 34.

Mr. Song's medical record suggests that he has experienced mental health issues while incarcerated. A psychologist at the Metropolitan Detention Center ("MDC") in Brooklyn, where Mr. Song was held following his arrest and prior to sentencing, attempted to make "clinical contact" with Mr. Song in December 2020 after reports that Mr. Song was experiencing "stress related to having acne." Ex. A, Admin. Contact with Inmate dated Dec. 23, 2020 ("Ex. A") (under seal). Mr. Song apparently reported to the psychologist that he had "no mental health concerns," though he expressed a "willingness to self-refer" to MDC's Psychological Services if needed. *Id*. During this period, Mr. Song's counsel also arranged for him to receive a psychological consult with Dr. Eric D. Goldsmith, who gave Mr. Song a "preliminary" diagnosis of bipolar disorder and recommended "comprehensive mental health treatment" including "individual therapy" and "medical management with mood stabilizing antipsychotic medication." Mot., Ex. 1 (Ltr. dated Jan. 7, 2021) 7–8, ECF No. 37-1. In April 2022, the psychologist who conducted Mr. Song's intake screening at FMC Devens, where he is presently incarcerated, noted that Mr. Song had a history of "Depressive Disorder" and "reported feelings of isolation that led him to fall into a state of

sadness and despair." Ex. B, Intake Screening dated Apr. 26, 2022 ("Ex. B") (under seal). Nonetheless, the psychologist concluded that Mr. Song did not need psychological services, noting that he "denied any recent mental health concerns" and did not "display, evidence, or report a need for frequent psychological intervention." *Id*.

Mr. Song describes his struggles with mental health in his motion for compassionate release. He states that at MDC, he experienced multiple COVID-19 quarantines and security lockdowns during which recreation and social contact were extremely limited for days at a time. Mot. 18. For example, Mr. Song describes a 20-day quarantine upon arriving at MDC during which he was "allowed out for only 30 minutes [] but locked in during the weekends," as well as two quarantines in late 2021 and early 2022 when he was "permitted to go out for only 3 times a week for 30 minutes." *Id*. Mr. Song states that these periods of isolation were "traumatizing and akin to psychological torture." *Id*. He also describes experiencing emotional volatility while incarcerated, which he attributes to bipolar disorder. Specifically, Mr. Song states that conversations with his attorney regarding the possibility of compassionate release "constantly brought [him] to a state of almost euphoria to grim hopelessness, reflecting the bipolar state, making his incarceration that much more stressful." *Id.* at 17.

Despite these challenges, Mr. Song appears to have intentionally avoided mental health treatment at MDC and FMC Devens. Mr. Song's medical record from both facilities consistently notes no "[m]ental [h]ealth [c]omplaint" or treatment, and Mr. Song denied having any mental health concerns in at least two encounters with Bureau of Prisons ("BOP") psychologists. Ex. C, 2020 Medical R. 7, 12 (under seal); Ex. E, 2022 Medical R. 16, 22 ("Ex. E") (under seal); Ex. A; Ex. B. In his motion, Mr. Song states that "mental health services at the MDC were abysmal" and that "[a]s a Pharmacist, he knew that serious therapy and counseling just could not be done in such

3

conditions." Mot. 15–16. He also states that he "chose not to seek any type of counseling" at FMC Devens for fear of "being placed in the [special housing unit] or in some sort of psych ward" or losing access to "meaningful programs." *Id.* at 16. He is likewise avoidant of medications such as "mood stabilizers," out of concern for "possible adverse drug reactions." *Id.*

Mr. Song has experienced other medical conditions while incarcerated, though none appears to be severe. In November 2022, he sustained an injury to his right shoulder while playing basketball; during a medical exam, he reported soreness and "[s]trength 4/5" compared to his left shoulder. Ex. E at 2, 5. Roughly three months later, in February 2023, he reported that he "no longer has shoulder issues" and declined physical therapy. Ex. F, 2023 Medical R. 2 ("Ex. F") (under seal). Additionally, there are multiple notes in Mr. Song's medical record regarding "dental caries," and, in April 2023, a dentist determined that one of Mr. Song's teeth had "extensive decay" and needed to be extracted. Ex. D, 2021 Medical R. 26 ("Ex. D") (under seal); Ex. E at 54; Ex. F at 8, 13. At the time, Mr. Song reported his pain from the decayed tooth as "0/10." Ex. F at 13. Last, Mr. Song tested positive for COVID-19 on January 8, 2022, though there is no indication in his medical record that his symptoms were severe. Ex. E at 65. He has received two doses of the COVID-19 vaccine, on April 23, 2021 and May 14, 2021, and one booster, on December 1, 2021. Ex. D at 21.

On April 25, 2023, Mr. Song's motion for compassionate release was docketed. *See* Mot. The motion argues for a sentence reduction primarily based on the conditions of Mr. Song's detention at MDC and their effect on his mental health, as well as sentencing disparities with defendants found guilty of similar conduct. Mot. 1, 14–30, Reply 1. The government filed its response on May 25, 2023. *See* Opp'n. On June 26, 2023, Mr. Song's motion for an extension of time to reply (dated June 12, 2023) and what appears to be a substantive reply to the government's

4

arguments (dated June 18, 2023) were docketed. *See* Def. Elijah Song's Mot. for Extension of Time, ECF No. 41; Reply. Because I have received Mr. Song's reply and have not received further substantive filings from him, I find his motion for extension of time moot.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; and (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment. *Id.* § 3582(c)(1)(A). The statute further instructs the reviewing court to consider (3) "the factors set forth in section [18 U.S.C. § 3553(a)] to the extent that they are applicable"; and (4) whether a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*[1] Because Mr. Song is proceeding *pro se*, his motion must be liberally construed. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017).

## DISCUSSION

### I. Administrative Exhaustion

The government and Mr. Song dispute whether Mr. Song exhausted his administrative remedies before filing this motion for compassionate release. Mr. Song appended to his motion

---

[1] A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S. Sentencing Guidelines Manual § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

5

forms submitted to the warden of FMC Devens and its Social Work Department as well as their responses. *See* Mot., Ex. 1 at 9–13, ECF No. 37-1. It appears that Mr. Song initially submitted a request to the warden of FMC Devens on May 12, 2022, *id.* at 9, who told him to apply to the Social Work Department, *id.* Mr. Song then wrote to the Department on May 22, and received a reply on May 31 directing him to complete a form. *Id.* at 10. The form instructed Mr. Song to check boxes if his request for compassionate release was based on "Medical Circumstances," "Non-Medical Circumstances – Elderly Inmates," "Death," or "Incapacitation," and Mr. Song wrote "[n]one of the above" rather than ticking a box. *Id.* at 11. Mr. Song otherwise completed the form on June 5, 2022. *Id.* The form appears to have been returned to Mr. Song on June 13, 2022 with instructions to "choose one category listed." *Id.* at 11, 13. Mr. Song also states that he subsequently filed another motion for compassionate release on March 22, 2023 and has not received a response. Mot. 13. (He does not indicate with whom he filed this motion.)

According to the government, FMC Devens acknowledges receipt of Mr. Song's May 22, 2022 request but claims that it "never received an official request to process the reduction in sentence form on Song's behalf." Opp'n 5. The government argues that even if Mr. Song did respond to the Social Work Department's May 31, 2022 directive to complete the form—as is indicated by the documentation Mr. Song submitted with his motion—Mr. Song still did not exhaust his administrative remedies because he "failed to follow through on the application" by ticking a box on the form. *Id*.

To support its argument, the government cites *United States v. Figueroa*, No. 15-CR-495 (ARR), 2021 WL 664004 (E.D.N.Y. Feb. 19, 2021), where I found that the defendant had "likely not exhausted his administrative remedies because there is no indication that he pursued an administrative appeal as directed by the warden," *id*. at *2. Here, however, Mr. Song *did* comply

with the warden's requests by returning the form to the Social Work Department. It seems instead that Mr. Song and the government do not agree on whether Mr. Song was required to actually tick one of the boxes on the form, or whether his "none of the above" answer was sufficient. Neither party has briefed the related question of whether the Social Work Department's response instructing Mr. Song to tick one of the boxes constitutes a challengeable "failure of the Bureau of Prisons to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). This issue will not affect the outcome of Mr. Song's motion because, as discussed below, Mr. Song has not demonstrated extraordinary and compelling reasons for his release, so I will assume *arguendo* that the Social Work Department's response was a denial of Mr. Song's request and satisfies the exhaustion requirement.

## II. Extraordinary and Compelling Reasons

In determining what constitutes "extraordinary and compelling reasons," a district court has discretion to consider "the full slate" of arguments that defendants present to support a sentence reduction, "whether in isolation or combination." *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . *alone* shall not be considered an extraordinary and compelling reason.'" *Id.* (quoting 28 U.S.C. § 994(t)). Additionally, district courts may consider "intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022).

Mr. Song primarily argues that there are extraordinary and compelling reasons for a reduction in his sentence based on the conditions of his incarceration and their effect on his mental health. Specifically, he argues that "the onerous lockdowns and quarantines during the COVID-19 pandemic" exacerbated his mental health conditions. Mot. 15. The government counters that

7

"[t]here is limited mention in the defendant's medical record of any mental health issues" and that Mr. Song "appears to be doing much better since his depressive disorder." Opp'n 6–7. Additionally, the government points to Mr. Song's assertions that he has chosen not to seek counseling or "take any medications prescribed for him" while incarcerated. *Id*. at 7.

While I am sympathetic to Mr. Song's account of the brutal conditions at MDC and the anguish they appear to have caused him, I cannot conclude that these factors are extraordinary and compelling reasons for his release, particularly given Mr. Song's decision to avoid mental health treatment. In his motion, Mr. Song cites multiple cases in which the court considered conditions imposed by the BOP in response to the pandemic in granting compassionate release. Yet in each case, these conditions were just one of multiple factors recommending a sentence reduction, alongside other factors such as the defendant's heightened risk of severe illness from COVID-19 or the defendant's near-completion of his sentence.[2] Here, however, there is no indication that Mr. Song is at a heightened risk for COVID-19, as he is a young man in good health who has been fully vaccinated. Moreover, Mr. Song has served approximately 38 months of his anticipated 51-month sentence, assuming full good time credit. While not insignificant, this proportion of time served is not enough to justify a sentence reduction.

As Mr. Song notes, in two of the cases he cites in his motion, the court granted compassionate release where the procedures implemented by the BOP in response to the pandemic

---

[2] *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 310 (S.D.N.Y. 2020) (granting compassionate release to a defendant whose "underlying health conditions put him at a high risk of severe illness from COVID-19"); *United States v. McRae*, No. 17-CR-643 (PAE), 2021 U.S. Dist. LEXIS 8777, at *13–14 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release where the defendant had "a number of medical conditions which make him especially vulnerable to the most serious effects of COVID-19"); *United States v. Romero*, No. 15-CR-445-18 (PAE), 2021 U.S. Dist. LEXIS 73877, at *8 (S.D.N.Y. Apr. 16, 2021) (granting compassionate release to a defendant who "served all but four months of the 69 months in prison that he is projected to serve").

specifically resulted in the elimination, or significant limitation, of mental health treatment available to the defendant. *See United States v. Hatcher*, No. 18-CR-454-10 (KPF), 2021 U.S. Dist. LEXIS 74760, at *12 (S.D.N.Y. Apr. 19, 2021) (granting compassionate release to a defendant who was "unable to receive mental health care, drug abuse treatment, and other important services" due to "extreme lockdown conditions"); *United States v. Reyes*, No. 19-CR-66 (LTS), 2021 U.S. Dist. LEXIS 406, at *4–5 (S.D.N.Y. Jan. 4, 2021) (granting compassionate release where pandemic measures led to the "unavailability (or at least severely reduced availability) of substance abuse and mental health treatment"). However, in this case, Mr. Song has intentionally avoided mental health treatment at both MDC and FMC Devens. As such, I cannot conclude that the BOP's procedures have limited Mr. Song's access to mental health treatment. Further, because Mr. Song's decision to avoid treatment has resulted in a limited medical record with respect to his mental health conditions, I am unable to adequately assess Mr. Song's mental health care needs and the extent to which the BOP can adequately meet those needs. For these reasons, I cannot find that the conditions of Mr. Song's incarceration or their effects on his mental health represent extraordinary and compelling reasons for a sentence reduction.

Finally, Mr. Song argues that his rehabilitation in prison supports his motion. As Mr. Song acknowledges, I cannot grant a sentence reduction based on rehabilitation alone. *See Brooker*, 976 F.3d at 237–38. Still, I commend Mr. Song for his record while incarcerated, as well as his commitment, as articulated in his filings, to support his family and community going forward.

### III. Section 3553(a) Factors

The First Step Act instructs that, even where extraordinary and compelling reasons for sentence reduction exist, I must also consider the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). These factors include: the nature and circumstances of the offense; the

defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed medical care or other correctional treatment; and the need to avoid unwarranted disparities in sentences among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Because I have determined that there are not extraordinary and compelling reasons for Mr. Song's release, I will limit my discussion of the § 3553(a) factors to the extent that they weigh against a sentence reduction in Mr. Song's case. I will however address the factor that Mr. Song raises in his motion; namely, the need to avoid unwarranted disparities in sentences. Mot. 20–30. Specifically, Mr. Song argues that his sentence is "now grossly disparate relative to [d]efendants with similar records who have been found guilty of similar conduct." *Id*. at 20–21. The government counters that the "cases that the defendant cites do not refer to defendants convicted of [18 U.S.C. § 844(f)(1)] with a five-year mandatory minimum sentence" and that "it is apparent that [Mr. Song] received the absolute minimum sentence he could have received" under § 844(f)(1). Opp'n 7.

I agree that Mr. Song has not demonstrated that his sentence is disparate relative to defendants with similar records who have been found guilty of similar conduct. As discussed, Mr. Song pleaded guilty to arson under 18 U.S.C. § 844(f)(1) and was sentenced to the five-year mandatory minimum for that offense. In his motion, Mr. Song identifies "[s]imilar 844(f)(1) cases" in which the defendant received a sentence shorter than five years. Mot. 25–26. However, in each of these cases, though the defendant was initially indicted on an 18 U.S.C. § 844 charge, the defendant eventually pleaded guilty to conspiracy to commit arson under 18 U.S.C. § 371.[3] "[A]n

---

[3] *See United States v. Willoughby*, No. 20-CR-111 (JCC) (W.D. Wash.), Compl., ECF No. 1

10

indictment is not evidence of guilt," and it does not "alter the presumption of innocence" to which every defendant is entitled. *United States v. Juwa*, 508 F.3d 694, 701 (2d Cir. 2007) (quotation omitted). Thus, regardless of the indictments, the defendants in the cases Mr. Song cites were not found guilty of arson, only conspiracy to commit arson under 18 U.S.C. § 371, which does not carry a five-year mandatory minimum. The sentence disparities between Mr. Song and these defendants are therefore attributable to the difference in underlying offense, as well as Congress's decision to impose a more severe punishment for arson compared to conspiracy to commit arson.

Mr. Song also argues that his sentence is disparate relative to "those who were granted compassionate release," and his motion includes a list of cases in which the defendant received a sentence reduction pursuant to the First Step Act. Mot. 20–24. However, none of these cases concerns a defendant found guilty of arson under § 884(f)(1) or other arson-related charge. As such, these are not "defendants found guilty of similar conduct," and the sentence reductions in the cases Mr. Song cites are not relevant points of comparison. I conclude, therefore, that Mr. Song has not demonstrated that his sentence reflects an "unwarranted disparity" with comparable sentences.

## CONCLUSION

For the reasons above, I deny Mr. Song's motion for compassionate release.

---

(complaint for violations of 18 U.S.C. §§ 844(f), 844(i)); *id.,* Judgment, ECF No. 82 (guilty plea to conspiracy to commit arson under 18 U.S.C. § 371); *United States v. Mattis et al.*, No. 20-CR-203 (BMC) (E.D.N.Y.), Compl., ECF No. 1 (complaint for violations of 18 U.S.C. § 844(i)); *id.,* Am. Judgment, ECF No. 123 (guilty plea to conspiracy to commit arson and conspiracy to possess and make an unregistered destructive device under 18 U.S.C. § 371); *id.*, Judgment, ECF No. 125 (same); *United States v. Smith et al.*, No. 20-CR-544 (LJL) (S.D.N.Y.), Compl., ECF No. 1 (complaint for violations of 18 U.S.C. § 844(f)); *id.*, Judgment, ECF No. 84 (guilty plea to conspiracy to commit arson under 18 U.S.C. § 371); *id.*, Judgment, ECF No. 100 (same); *United States v. Andrews*, No. 20-CR-508 (SO) (N.D. Ohio), Compl., ECF No. 1 (complaint for violation of 18 U.S.C. § 844(f)(1)); *id.*, Judgment, ECF No. 73 (guilty plea to conspiracy to commit arson under 18 U.S.C. § 371).

SO ORDERED.

      /s/
Allyne R. Ross
United States District Judge

Dated:      October 11, 2023
              Brooklyn, New York